969 So.2d 1060 (2007)
Kevin Dewayne POWELL, Appellant,
v.
STATE of Florida, Appellee.
No. 2D05-646.
District Court of Appeal of Florida, Second District.
October 10, 2007.
Rehearing Denied November 28, 2007.
*1061 James Marion Moorman, Public Defender, and Robert D. Rosen, Assistant Public Defender, Bartow, for Appellant.
Kevin Dewayne Powell, pro se.
Bill McCollum, Attorney General, Tallahassee, and Deborah Fraim Hogge, Assistant Attorney General, Tampa, for Appellee.
CASANUEVA, Judge.
In this Anders[1] appeal from his judgment and sentence for felon in possession of a firearm, Kevin Dewayne Powell raised an issue of arguable merit in his pro se brief. Upon order from this court, Mr. Powell's attorney briefed the following issue: whether the trial court erred in permitting the use of Mr. Powell's statements at trial. After Miranda[2] warnings that Mr. Powell claims did not adequately inform him of his right to have counsel present during questioning, Mr. Powell told Tampa police detectives that he had purchased the firearm off the street and carried it for protection, in spite of the fact that he was a convicted felon. We hold that the warnings were deficient under the Fifth Amendment of the Constitution of the United States and Article I, Section 9 of the Constitution of the State of Florida. We reverse Mr. Powell's conviction and remand for further proceedings.
The issue in this case, as in the recent case of M.A.B. v. State, 957 So.2d 1219 (Fla. 2d DCA 2007) (en banc), is whether the warning given to Mr. Powell complied with Miranda. In M.A.B., our court considered the adequacy of this identical warning and was evenly divided in a seven-to-seven tie. Per Florida Rule of Appellate *1062 Procedure 9.331(a), "the panel decision of the district court shall stand as the decision of the court. If there is no panel decision, a tie vote will affirm the trial court decision." In M.A.B., there was no prior panel decision; therefore, the evenly divided en banc opinion simply affirmed the trial court's decision and certified a question to the Florida Supreme Court. However, because M.A.B. lacked a majority, it is neither a binding decision nor a binding precedential opinion. See State v. McClung, 47 Fla. 224, 227, 37 So. 51 (Fla. 1904) (explaining that when a question of law is decided by an evenly divided court, the "judgment possesses no dignity as a judicial precedent" and it "carries on its face a badge which precludes any application" of it in the "future under the doctrine of stare decisis."); Lee v. State, 854 So.2d 709, 716 (Fla. 2d DCA 2003) (noting that "under the Florida Constitution, both a binding decision and a binding precedential opinion are created to the extent that" a majority of the court have joined in an opinion and a decision). Accordingly, this panel is free to address this issue.
We also note that because a majority of this court did not reach a decision on the adequacy of the Miranda warnings in M.A.B., an argument can be made that the supreme court will not have jurisdiction to answer the question we certified to it in that case.[3] We recognize that at least one other district court faced a similar situation with an en banc tie vote and relied on the flexibility inherent in the appellate rules of procedure to address it at the district court level.[4] Either way, because this court was evenly divided in M.A.B., we did not actually resolve the certified question and M.A.B. may be deficient for Florida Supreme Court review.[5] The recent case of Speedway Superamerica LLC v. Dupont, 955 So.2d 533 (Fla.2007), demonstrates exactly such a scenario. Speedway Superamerica came before the Florida *1063 Supreme Court based on that court's jurisdiction to review a question certified by the district court to be a matter of great public importance. The district court had sat en banc in Speedway Superamerica, as in M.A.B. Although it initially accepted the case, the Florida Supreme Court ultimately concluded that it did not have jurisdiction to review Speedway Superamerica and dismissed the review proceedings. Id. at 534-35. Justice Pariente noted in her concurrence, "the constitution also requires that the [district] court `pass[ ] upon a question certified by it to be of great public importance.'" Id. (citing art. V section 3(b)(4)). Justice Pariente opined that it was "questionable" whether the district court had answered the question. Id. Because of our split in M.A.B., the en banc court did not answer the certified question.
The present case contains the identical Miranda warning that was involved in M.A.B. See 957 So.2d at 1220. Because this case is being resolved by the assigned panel, we necessarily address the issue certified in M.A.B. Our determination will "pass upon" the certified question on this point of law.
In M.A.B., every judge of this court concurred in the certification of the following question of great public importance pursuant to Article V, section 3(b)(4), of the Florida Constitution and Florida Rule of Appellate Procedure 9.030(a)(2)(A)(v):
DOES THE FAILURE TO PROVIDE EXPRESS ADVICE OF THE RIGHT TO THE PRESENCE OF COUNSEL DURING QUESTIONING VITIATE MIRANDA WARNINGS WHICH ADVISE OF BOTH (A) THE RIGHT TO TALK TO A LAWYER "BEFORE QUESTIONING" AND (B) THE "RIGHT TO USE" THE RIGHT TO CONSULT A LAWYER "AT ANY TIME" DURING QUESTIONING?
We again certify the question as one of great public importance and, for the reasons set forth herein, answer the question in the affirmative, finding the warning is constitutionally deficient. Because the Miranda warnings given to Mr. Powell contain limiting language as to "before questioning" and the right to consult with a lawyer, we hold such warnings failed to comply with state and federal constitutional requirements to adequately inform the accused of his or her right to have an attorney present throughout interrogation.

STATEMENT OF THE FACTS
On August 10, 2004, Tampa Detectives Salvatore Augeri, Randy Estevez and other officers went to a residence in Tampa to investigate Mr. Powell. Shazeena West, Mr. Powell's girlfriend, allowed the officers to enter her apartment. Mr. Powell was one of at least four adults present in the apartment when police arrived. He was in the upstairs hallway coming from near the southeast corner bedroom. The officers searched that bedroom and under the bed found a loaded nine-millimeter handgun.[6] Mr. Powell was arrested and transported to Tampa Police headquarters where he was questioned after being advised of his rights under Miranda. According to police, Mr. Powell agreed to talk.
During the direct examination of Detective Augeri, prior to his testimony concerning *1064 statements that Mr. Powell allegedly made, defense counsel objected on the ground that the Miranda warning was invalid. The trial court allowed defense counsel to voir dire the witness. The subsequent testimony revealed that the standard police department Form 310 used during the interrogation of Mr. Powell did not explicitly indicate that he had the right to have an attorney present during questioning. Detective Augeri testified that he witnessed another officer read Form 310 verbatim to Mr. Powell. The written warning, which was introduced at trial as an exhibit, states as follows:
You have the right to remain silent. If you give up the right to remain silent, anything you say can be used against you in court. You have the right to talk to a lawyer before answering any of our questions. If you cannot afford to hire a lawyer, one will be appointed for you without cost and before any questioning. You have the right to use any of these rights at any time you want during this interview.
A bench conference was held, and the court ruled that the recitation concerning the right to an attorney before questioning was adequate. The detective then testified that Mr. Powell said the firearm was his and that he had purchased it on the street and carried it for protection, even though he was a convicted felon.[7] Defense counsel renewed her objection to admitting Mr. Powell's custodial statement. The trial court overruled this objection. Mr. Powell then testified in his own defense. He said that he did not live at the apartment on August 10, 2004, but he heard a commotion when the officers entered. He said he was handcuffed and taken into custody. He testified he did not know the gun was present under the bed because he only stayed at that address every once in a while.[8] Mr. Powell was convicted and sentenced to ten years in prison.

ANALYSIS
Although decisional law has not prescribed talismanic warning language, we conclude the warning given to Mr. Powell did not comply with the dictates of Miranda and its progeny. Critical in this analysis is Miranda's mandate that a suspect *1065 be told that he or she has the right to the presence of an attorney. This is the overarching right from which the right to talk to or consult with an attorney flows. Advising a suspect that he or she has the right "to talk to a lawyer before answering . . . any of our questions" constitutes a narrower and less functional warning than that required by Miranda.[9]
The Fifth Amendment to the United States Constitution specifies that no person "shall be compelled in any criminal case to be a witness against himself." To ensure compliance with the protections of the Self-Incrimination Clause when a suspect has been deprived of freedom during a custodial interrogation, the Court identified four essential warnings in Miranda:
[1] [A suspect:] must be warned prior to any [custodial] questioning that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, and [4] that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.
384 U.S. at 479, 86 S.Ct. 1602.
Clearly, suspects must be specifically informed that they possess these constitutional rights before law enforcement officers may undertake any custodial questioning to solicit incriminating statements that will later be used against them in court. This case focuses on the third right  the right to the presence of an attorney  which "must be afforded to [suspects] throughout the interrogation." Id. (emphasis added.) Due to the deficiency in the wording of the warning given to Mr. Powell, he was not unequivocally informed that he had the right to the presence of an attorney during questioning. Another district court has held that, although warnings need not be administered in the exact form set out in Miranda, the person in custody must be clearly advised of the right to have an attorney present not only before interrogation but during interrogation as well. Roberts v. State, 874 So.2d 1225, 1226 (Fla. 4th DCA 2004).
Our holding is derived not only from Miranda but also from the Court's observations concerning that case in Dickerson v. United States, 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000). Chief Justice Rehnquist, in his analysis of the underpinnings of the Miranda rule and the evolution of the law governing voluntariness and admissibility of a suspect's confession, reiterated the constitutional bases for the voluntariness requirement. Prior to Miranda, such protections were historically premised on both the Self-Incrimination Clause and the Due Process Clause[10] *1066 of the Fourteenth Amendment, but Miranda changed the focus of the Fifth Amendment inquiry. Dickerson, 530 U.S. at 433-34, 120 S.Ct. 2326. No longer was physical brutality or the "third degree" the major evil to be stemmed; by the time the Court decided Miranda in 1966, law enforcement departments, seizing advantage from the fact that "custodial interrogation exacts a heavy toll on individual liberty and trades on the weakness of individuals," had developed psychologically coercive practices to extract statements from suspects in custody. Id. at 435, 120 S.Ct. 2326 (quoting Miranda, 384 U.S. at 455, 86 S.Ct. 1602). Interrogators were trained to isolate the subject, create an atmosphere of domination, posit the guilt of the accused as a fact, and use various tactics to create hostility. Miranda, 384 U.S. at 450-451, 86 S.Ct. 1602. The Dickerson Court therefore again emphasized that "the coercion inherent in custodial interrogation blurs the line between voluntary and involuntary statements, and thus heightens the risk" that a suspect's Fifth Amendment privilege against self-incrimination will be obliterated. 530 U.S. at 435, 120 S.Ct. 2326.
Because the rule announced in Miranda is inextricably bound to a suspect's Fifth Amendment privilege, the warnings have taken on constitutional dimensions. In order to guard against the unacceptable risk of violating a suspect's privilege against self-incrimination, "the Miranda rule creates a presumption of coercion, in the absence of specific warnings, that is generally irrebuttable for purposes of the prosecution's case in chief." United States v. Patane, 542 U.S. 630, 639, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004) (plurality opinion of Thomas, J., joined by Rehnquist, C.J., and Scalia, J.). A concomitant disadvantage of the Miranda rule is that "statements which may be by no means involuntary, made by a defendant who is aware of his `rights,' may nonetheless be excluded and a guilty defendant go free as a result." Dickerson, 530 U.S. at 444, 120 S.Ct. 2326.
In order to dispel the compulsion and coercion inherent in custodial surroundings, the Miranda rule requires the disclosure of important safeguards, including the presence of counsel to "insure that statements made in the government-established atmosphere are not the product of compulsion." Miranda, 384 U.S. at 466, 86 S.Ct. 1602. The Court's emphasis on the need for counsel's presence could not have been stronger:
The circumstances surrounding in-custody interrogation can operate very quickly to overbear the will of one merely made aware of his privilege by his interrogators. Therefore, the right to have counsel present at the interrogation is indispensable to the protection of the Fifth Amendment privilege under the system we delineate today. Our aim is to assure that the individual's right to choose between silence and speech remains unfettered throughout the interrogation process. A once-stated warning, delivered by those who will conduct the interrogation, cannot itself suffice to that end among those who most require knowledge of their rights. . . . Even preliminary advice given to the accused by his own attorney can be swiftly overcome by the secret interrogation process. Thus, the need for counsel to protect the Fifth Amendment privilege comprehends not merely a right to consult with counsel prior to questioning, but also to have counsel present during any questioning if the defendant so desires.

Id. at 469-70, 86 S.Ct. 1602 (citations omitted; emphasis added).
*1067 The warning that Mr. Powell received was constitutionally flawed because the right to talk to or consult with an attorney before questioning is not identical to the right to the presence of an attorney during questioning. Miranda requires that suspects be "clearly informed" of their right to have a lawyer with them during questioning. Id. at 471, 86 S.Ct. 1602. "[T]his warning is an absolute prerequisite to interrogation." Id. at 472, 86 S.Ct. 1602. The purported safe harbor language  that Mr. Powell was informed of his "right to use any of these rights at any time . . . during this interview"  simply cannot cure the deficiency because Mr. Powell was never informed that he had the right to have a lawyer with him at all times during his custodial interrogation.
Although there presently exists no talismanic warning language, Miranda's hallmark is the need for effective communication to a suspect of the basic constitutional right against self-incrimination, including the right to the presence of counsel. The ability to talk to a lawyer before answering questions, which Mr. Powell was told was his right, is derivative of his and every suspect's greater right to have an attorney present at all times during custodial interrogation. That greater right was never unequivocally conveyed to Mr. Powell. Thus, the language used by the police department in this case does not rise to a functional equivalent of the required Miranda warning.
The Supreme Court's position in Miranda was informed by the experience of law enforcement practices existing both before and at the time of the opinion. The Court concluded such interrogation techniques necessitated a protective constitutional rule. The necessity for this rule has been woven into our constitutional fabric. Dickerson, 530 U.S. at 431, 120 S.Ct. 2326. We measure and cut our position here from that same constitutional cloth. We focus not on how the words might be parsed afterwards, but rather on the contemporaneous character of the informational warning: whether, at the moment given, the language clearly communicated the right to have an attorney present during questioning, as required by Miranda. In our view, when a less than complete warning is given to a suspect in custody, it tears at this constitutional fabric.
Over a century ago, Oliver Wendell Holmes wrote:
The life of the law has not been logic: it has been experience. The felt necessities of the time, the prevalent moral and political theories, intuitions of public policy, avowed or unconscious, even the prejudices which judges share with their fellow-men, have had a good deal more to do than the syllogism in determining the rules by which men should be governed.
The Common Law 5 (Mark DeWolfe Howe ed., Little, Brown & Co. 1963) (1881). Miranda exists so that those experiences described in the opinion are not repeated; and, if repeated, then, as a matter of law, a penalty is extracted.
Allowing Mr. Powell's custodial statements to be used against him violated his constitutional rights. We therefore hold that the court should have suppressed his statements.
As we did in M.A.B., we certify the following question as one of great public importance pursuant to Article V, section 3(b)(4), of the Florida Constitution and Florida Rule of Appellate Procedure 9.030(a)(2)(A)(v):
DOES THE FAILURE TO PROVIDE EXPRESS ADVICE OF THE RIGHT TO THE PRESENCE OF COUNSEL DURING QUESTIONING VITIATE MIRANDA WARNINGS WHICH ADVISE OF BOTH (A) THE RIGHT TO *1068 TALK TO A LAWYER "BEFORE QUESTIONING" AND (B) THE "RIGHT TO USE" THE RIGHT TO CONSULT A LAWYER "AT ANY TIME" DURING QUESTIONING?
We answer the certified question in the affirmative. We hold that the warnings provided in this case were constitutionally deficient, under the Fifth Amendment of the Constitution of the United States and Article I, Section 9 of the Constitution of the State of Florida, and failed to comply with the Miranda requirements. Accordingly, we reverse Mr. Powell's conviction and remand for further proceedings.
Reversed and remanded.
SILBERMAN, J., Concurs.
KELLY, J., Concurs in part; dissents in part.
KELLY, J., Concurring in part; dissenting in part.
Properly framed, the test for reviewing the adequacy of the warnings provided by law enforcement to an individual taken into custody "is simply whether the warnings reasonably `conve[y] to [a suspect] his rights as required by Miranda.'" Duckworth v. Eagan, 492 U.S. 195, 203, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989) (quoting California v. Prysock, 453 U.S. 355, 361, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981)). In my view, Mr. Powell was not deprived of any information essential to his ability to knowingly waive his Fifth Amendment privilege against self-incrimination, and in particular, his right to have counsel present during questioning. Because the warnings, in their totality, "touched all of the bases required by Miranda," I respectfully dissent from the majority opinion to the extent that it holds otherwise. See id. at 203, 205, 109 S.Ct. 2875. Although the majority's thoughtful analysis of the issue is not without persuasive force, I believe the reasoning detailed in Judge Canady's opinion in M.A.B. v. State, 957 So.2d 1219 (Fla. 2d DCA 2007), is more in line with the body of precedent the Supreme Court has provided for guidance on this issue, and accordingly, I adopt that reasoning as my own. I fully concur, however, with the majority's conclusion that, in light of this court's evenly divided opinion in M.A.B., it is appropriate for this panel to address the issue of the adequacy of the Miranda warnings Mr. Powell received.
NOTES
[1] Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] We note that on August 21, 2007, the Florida Supreme Court granted review on M.A.B., just as the current opinion was about to issue. In light of the cases referenced in footnote 5, we include the jurisdictional discussion in an abundance of caution.
[4] The Florida Supreme Court stated "[c]onsistency of law within a district is essential to avoid unnecessary and costly litigation. We conclude that district court judges, through their opinions, will adopt principles to ensure this result." In Re Rule 9.331, Determination of Causes by a District Court of Appeal En Banc, Florida Rules of Appellate Procedure, 416 So.2d 1127, 1130 (Fla.1982). "The district courts are free, however, to develop their own concept of decisional uniformity." Fla. R.App. P. 9.331 committee notes, 1982 amend.; see also O'Brien v. State, 478 So.2d 497, 499 (Fla. 5th DCA 1985) (noting "inherent ambiguities of the en banc rule in regard to tie votes" and "problems of interpretation [with the en banc rule]," and adopting as a principle that an en banc tie affirmance becomes the binding precedent with the subject question to be certified to the Florida Supreme Court as a matter of great public importance). This court has not expressly adopted a similar approach.
[5] This court has previously certified a question of great public importance to the Florida Supreme Court, but the supreme court dismissed that case for review due to a lack of jurisdiction on the basis that this court did not pass upon the question prior to certifying the question. Pirelli Armstrong Tire Corp. v. Jensen, 777 So.2d 973, 974 (Fla.2001); see also Gee v. Seidman & Seidman, 653 So.2d 384, 385 (Fla.1995) (dismissing the case because the district court did not address the issue contained in the certified question); accord Revitz v. Baya, 355 So.2d 1170, 1171 (Fla.1977); Boler v. State, 678 So.2d 319, 320 (Fla.1996) (explaining that "[w]e do not have jurisdiction to answer a certified question of great public importance under article V, section 3(b)(4) where there is no district court `decision' for our review."); but see Spence v. Hughes, 500 So.2d 538 (Fla.1987) (granting jurisdiction on a certified question of great public importance from a decision of an equally divided court).
[6] Mr. Powell filed a pro se motion to suppress the results of the search of the house. It is unclear from our record whether the motion was denied or withdrawn, but in either event, the case proceeded to trial. Testimony at trial indicated that police arrived at the girlfriend's apartment looking for Mr. Powell in reference to another matter. They testified that she let them in but the record is silent about whether she provided permission to search the individual rooms of the apartment.
[7] Although it was not argued in the trial court, a possible corpus delicti issue exists. In order to introduce Mr. Powell's confession, the State was required to prove that Mr. Powell constructively possessed the weapon. The general order of proof is to show that a crime has been committed and then that the defendant committed it. Spanish v. State, 45 So.2d 753, 754 (Fla.1950); see State v. Allen, 335 So.2d 823, 825-825 (Fla.1976). A defendant's confession or statement "may be considered in connection with other evidence" but corpus delicti cannot rest upon the confession or admission alone. Cross v. State, 96 Fla. 768, 119 So. 380, 384 (1928). Before a confession or statement may be admitted there must be prima facie proof tending to show the crime was committed. Farinas v. State, 569 So.2d 425 (Fla.1990); Bassett v. State, 449 So.2d 803 (Fla.1984); Frazier v. State, 107 So.2d 16, 26 (Fla.1958). In the present case, although Mr. Powell stipulated he was a convicted felon, there was no independent proof that he possessed a firearm. There were several other adults in the apartment at the time of Mr. Powell's arrest. The State did not introduce forensic evidence from the gun or elicit any testimony that would place the firearm in Mr. Powell's possession. Simply put, there was no evidence other than the unwarned statements Mr. Powell made to establish that a crime had been committed.
[8] Mr. Powell testified that his custodial statements to detectives concerning the gun were untrue. He testified that he signed the consent form waiving his rights and made the false statements because the detectives threatened to charge his girlfriend with possessing the firearm. On rebuttal the detectives denied threatening Mr. Powell.
[9] Were we writing on a clean slate, we would rephrase the question in the following manner: IS THE MIRANDA REQUIREMENT THAT A SUSPECT BE WARNED OF THE RIGHT TO THE PRESENCE OF AN ATTORNEY VIOLATED WHEN A SUSPECT IS WARNED THAT "YOU HAVE THE RIGHT TO TALK TO A LAWYER BEFORE ANSWERING ANY OF OUR QUESTIONS" AND "YOU HAVE THE RIGHT TO USE ANY OF THESE RIGHTS AT ANY TIME YOU WANT DURING THIS INTERVIEW"? We likewise answer this question in the affirmative.
[10] In the landmark confession case, Brown v. Mississippi, 297 U.S. 278, 281-86, 56 S.Ct. 461, 80 L.Ed. 682 (1936), police testified that they physically abused the defendants prior to their confessions. The Court reversed based on a denial of due process under the Fourteenth Amendment and admonished the trial court stating, "[t]he rack and torture chamber may not be substituted for the witness stand." Id. at 286-87, 56 S.Ct. 461. It was not until Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), that the Court held the self-incrimination clause of the Fifth Amendment was applicable to the states. Miranda was decided two years later.