976 So.2d 1197 (2008)
Richard WILLIAMS, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 2D06-911.
District Court of Appeal of Florida, Second District.
March 26, 2008.
*1198 James Marion Moorman, Public Defender, and Judith Ellis, Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Timothy A. Freeland, Assistant Attorney General, Tampa, for Appellee.
VILLANTI, Judge.
Richard Williams appeals his conviction for second-degree murder. We affirm but write to explain why the admission of Williams' "confession" was harmless error in this case.
On the evening of May 20, 2003, Tampa police officers responded to an apartment after a call from a neighbor concerning a disturbance and the sound of gunshots. Inside the apartment, they found Constance Culbreth stabbed and shot. The police recovered several spent bullet casings from Culbreth's apartment and from the apartment below. Culbreth subsequently died of her injuries, and the police developed her live-in boyfriend, Richard Williams, as the potential perpetrator of the crime.
On the morning of May 21, 2003, the police received a call that someone matching Williams' description was behind a Walgreens drug store. Officer Downes responded to the Walgreens and found a man matching Williams' description curled up on his side beside a tree in the parking lot. Because he did not know whether the man was armed, Downes pointed his gun at the man and ordered him to get on his stomach. The man made eye contact with Downes and then blurted out, "I got my gun on me." Downes was able to peaceably secure the man, who turned out to be Williams, and a gun was found on the ground where Williams had been lying. The police took the gun into evidence.
Williams was subsequently transported to police headquarters, where he was read the Tampa Police Department's standard Miranda[1] warnings. Williams was also given a Miranda rights form, which contained the same warning language as the oral warnings previously given to him. Williams signed the Miranda form indicating that he understood his rights. Williams then waived his rights and agreed to speak with the officers.
Shortly thereafter, Detective John Tindall brought the gun recovered from beneath Williams into the interview room and asked Williams whether the gun was his. Williams responded, "Yeah, that's mine." Tindall then asked Williams whether it was "the firearm you used to shoot Ms. Culbreth with?" Williams looked at Tindall and nodded his head in the affirmative.
No other statements made by Williams were offered into evidence at trial. Instead, the State sought to establish its case through testimony that placed Williams and Culbreth alone in their apartment on the night of the murder and forensic evidence that established that the bullets recovered from Culbreth's body and the bullet casings recovered from her apartment were fired from the gun that Williams had with him when he was arrested. Based on this evidence, the jury found Williams *1199 guilty of second-degree murder with a firearm.
In this appeal, Williams argues that (1) the statements he made during the police interview should have been suppressed because he unequivocally invoked his right to remain silent, (2) the statements he made during a police interview should have been suppressed because the Miranda warnings he received did not sufficiently inform him of his right to have an attorney present during questioning, and (3) certain physical evidence should have been suppressed because it was obtained following an illegal arrest. We affirm on issues (1) and (3) without comment. We write solely to explain our affirmance on issue (2).
This court recently addressed the issue of whether the standard Miranda warnings given by the Tampa Police Department sufficiently advised a defendant of the right to have an attorney present during police questioning. See M.A.B. v. State, 957 So.2d 1219 (Fla. 2d DCA 2007) (en banc), review granted, 962 So.2d 337 (Fla.2007). In M.A.B., upon en banc consideration, this court was evenly divided as to whether the warnings were legally sufficient. Id. at 1220. As a result, pursuant to Florida Rule of Appellate Procedure 9.331(a), the trial court's ruling in that case was affirmed. Id. This court also certified the question of the legal sufficiency of these warnings as one of great public importance. Id.
Shortly thereafter, the same issue regarding the sufficiency of the standard Tampa Police Department Miranda warnings was addressed by a panel of this court in Powell v. State, 969 So.2d 1060 (Fla. 2d DCA 2007), review granted, 973 So.2d 1123 (Fla.2008). In Powell, the majority held that the Tampa Police Department's standard Miranda warnings were insufficient to comply with the requirements of Miranda. 969 So.2d at 1063. This decision in Powell constitutes binding precedent in this district. Thus, because the Miranda warnings given to Williams in this case were identical to the warnings at issue in Powell, we are compelled to hold that the Miranda warnings given in this case were legally insufficient.
That holding, however, does not end our analysis. Despite the error in failing to suppress Williams' statements, we need not reverse if we can conclude beyond a reasonable doubt that admission of the statement was harmless. Caso v. State, 524 So.2d 422, 425 (Fla.1988) ("The erroneous admission of statements obtained in violation of Miranda rights is subject to harmless error analysis."); Mitchell v. State, 32 Fla. L. Weekly D2958, ___ So.2d ___, 2007 WL 4355200 (Fla. 2d DCA Dec. 14, 2007). To establish harmless error, the State must prove beyond a reasonable doubt that the error did not contribute to the conviction. State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986). "Application of the test requires an examination of the entire record by the appellate court including a close examination of the permissible evidence on which the jury could have legitimately relied, and in addition an even closer examination of the impermissible evidence which might have possibly influenced the jury verdict." Id.; see also Crumbley v. State, 876 So.2d 599, 602 (Fla. 5th DCA 2004).
Here, after a thorough review of the record, we conclude that "there is no reasonable possibility that the error contributed to [Williams'] conviction." DiGuilio, 491 So.2d at 1135. The improper "confession" in question consisted of Williams' mere head nod in response to the question, "Is this the firearm you used to shoot [the victim] with?" The State only briefly argued the effect of this acknowledgement during its closing argument. Through other evidence, the State established that Williams and Culbreth were alone in their *1200 apartment when neighbors heard a struggle followed by gunshots from inside the apartment. When the police arrived, Culbreth was found alone in the apartment mortally wounded by gunshots and stab wounds. An empty gun case was found in the bedroom. Williams' car was still parked at the apartment, but he was gone. He was found early the next morning within walking distance of the apartment and in possession of a firearm. Upon seeing a police officer, Williams spontaneously volunteered, "I got my gun on me," and the officers recovered the firearm from beneath Williams' body. Forensic evidence established that the bullets and bullet casings recovered from the murder scene were fired from the firearm found in Williams' possession. In light of all of this evidence, there is simply no reasonable possibility that Williams' single head nod contributed to his conviction.
The recent supreme court case of Cuervo v. State, 967 So.2d 155 (Fla.2007), does not compel a different result because the facts of Cuervo are distinguishable. Like Williams, Cuervo was charged with first-degree murder. The confrontation between Cuervo and the victim occurred in the victim's car with no witnesses present. Id. at 167. However, unlike in this case, the State presented no forensic evidence connecting Cuervo to the crime. Id. Further, Cuervo did not make any spontaneous statements to the police. Id. After the trial court denied Cuervo's motion to suppress, Cuervo relied on the statements he made to the officers concerning his mental state to challenge the premeditation element of the first-degree murder charge. Id. In finding that the error in refusing to suppress Cuervo's statements was not harmless, the supreme court explained that "the defense might have pursued a different theory of defense had the trial court granted its motion to suppress [Cuervo's] confession." Id.
Here, there is nothing in the record to support an argument that Williams might have pursued a different theory of defense had the trial court granted his motion to suppress. At the close of the State's case, Williams successfully obtained a judgment of acquittal on the charge of first-degree murder, and the case was submitted to the jury as a second-degree murder case. Thus, the issue of premeditation was not before the jury. Williams' theory of defense was that the State had not presented any evidence to establish that he acted with a depraved mind or with evil intent. He argued that the evidence of a struggle in the apartment combined with the fact that Culbreth was a much larger person than Williams raised reasonable doubts as to what happened in the minutes before the shooting. Based on this, Williams argued that the State had simply failed to prove its case for second-degree murder, particularly in light of the elements of justifiable and excusable homicide. Thus, nothing about Williams' defense flowed from his acknowledgement that he shot the victim.
In view of the other evidence presented at trial, Williams' head nod played such a minor role in his defense that we conclude that any error in its admission was harmless beyond a reasonable doubt. Accordingly, we affirm.
Affirmed.
CANADY and LaROSE, JJ., Concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).