# Third District Court of Appeal

## State of Florida

Opinion filed January 18, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-1012
Lower Tribunal No. F15-25089
_____

**Peter Arnold,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Miguel M. de la O, Judge.

Carlos J. Martinez, Public Defender, and Andrew Stanton, Assistant Public Defender, for appellant.

Ashley Moody, Attorney General, and Richard L. Polin, Assistant Attorney General, for appellee.

Before SCALES, GORDO and BOKOR, JJ.

SCALES, J.

Peter Arnold appeals from a final order revoking his probation, claiming that the trial court erred in denying Arnold's motion to suppress his videotaped, sworn statement to the police. Finding no reversible error, we affirm the denial of Arnold's motion to suppress and the final order of probation revocation. Arnold also appeals the final order imposing sentence, claiming that the trial court, by conducting the March 26, 2021 sentencing hearing via the Zoom videoconferencing platform,[1] violated his procedural due process right[2] to be physically present at the hearing. Because the record does not show that the trial court conducted the requisite balancing test, weighing Arnold's due process right to be physically present at sentencing against the State's competing interests in holding the proceeding remotely, we reverse and remand for a new sentencing hearing.

## I.    RELEVANT FACTS AND PROCEDURAL BACKGROUND

---

[1] As discussed in more detail, *infra*, the remote sentencing hearing conducted below occurred while the Florida Supreme Court's administrative order temporarily suspending court rules that "limit or prohibit the use of communication equipment for the remote conduct of proceedings" was still in effect. See In re Comprehensive COVID-19 Emergency Measures for the Florida State Courts, Fla. Admin. Order No. AOSC20-23, Amend. 9 (Feb. 17, 2021).

[2] See Amend. XIV, U.S. Const.; Art. 1, § 9, Fla. Const.

2

In May 2016, Arnold pled guilty to two counts of battery (counts I and II), two counts of aggravated battery with a deadly weapon (counts III and IV), and third-degree grand theft of a vehicle (count V). The trial court sentenced Arnold to time served on counts I and II, and to three years of probation on counts III, IV, and V.

In August 2018, Arnold's probation officer filed an affidavit of violation of probation alleging that Arnold had violated numerous conditions of his probation that are not relevant here. The relevant Third Amended Affidavit of Violation of Probation alleged further that Arnold had violated the conditions of his probation by committing second-degree murder with a weapon and by possessing a firearm as a convicted felon.

Prior to the probation revocation hearing, Arnold moved to suppress his videotaped, sworn statement to the police, claiming that his Miranda[3] waiver was not knowingly and voluntarily given. After holding an evidentiary hearing on Arnold's motion to suppress, the trial court entered a detailed order denying the motion. Following a probation revocation hearing[4] the trial

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

[4] Both the hearing on Arnold's motion to suppress and the probation revocation hearing were held via the Zoom videoconferencing platform. In this appeal, as below, Arnold presents no constitutional challenges with respect to those hearings being conducted remotely.

court determined, by a preponderance of the evidence, that Arnold had committed two willful and substantial violations of the terms of his probation by committing second-degree murder and possessing a firearm as a convicted felon.

Arnold thereafter moved to continue the sentencing date for his probation revocation violations until the conclusion of his jury trial on the second-degree murder and gun possession charges. Arnold also filed an "Objection to Remote Sentencing," arguing that conducting his sentencing hearing via the Zoom videoconferencing platform violated Arnold's procedural due process right to be physically present in the courtroom for sentencing. On March 24, 2021, the trial court entered separate orders denying Arnold's motion to continue the sentencing and overruling Arnold's objection to the remote sentencing proceeding.

On March 26, 2021, the trial court conducted Arnold's remote sentencing hearing via the Zoom videoconferencing platform. Other than the trial judge, all participants at the hearing appeared remotely, with defense counsel and Arnold appearing from different locations. The sentencing hearing transcript confirms that the only constitutional objection raised at sentencing was Arnold's procedural due process right to be present in the courtroom.

4

The trial court sentenced Arnold to fifteen years in prison for counts III and IV, and to five years in prison for count V, the sentences to run consecutively, and with credit for time served. Arnold timely filed this appeal.

## II. ANALYSIS

### A. The Motion to Suppress[5]

We need not decide whether the trial court erred in denying Arnold's motion to suppress because, even if the court erroneously admitted Arnold's videotaped, sworn statement into evidence at the probation revocation hearing, any error was harmless beyond a reasonable doubt. See Williams v. State, 976 So. 2d 1197, 1199 (Fla. 2d DCA 2008) ("To establish harmless error, the State must prove beyond a reasonable doubt that the error did not contribute to the conviction. State v. DiGuilio, 491 So. 2d 1129, 1135 (Fla. 1986). 'Application of the test requires an examination of the entire record by the appellate court including a close examination of the permissible evidence on which the jury could have legitimately relied, and in addition an even

---

[5] "In reviewing a trial court's ruling on a motion to suppress, appellate courts must accord a presumption of correctness to the trial court's determination of the historical facts, but must independently review mixed questions of law and fact that ultimately determine the constitutional issues arising in the context of the Fourth Amendment." Moody v. State, 842 So. 2d 754, 758 (Fla. 2003). Such rulings are also subject to harmless error analysis. See Connor v. State, 803 So. 2d 598, 609 (Fla. 2001).

closer examination of the impermissible evidence which might have possibly influenced the jury verdict.' Id.").

The State presented substantial evidence at the probation revocation hearing conducted below, including: (i) the testimony of the victim's girlfriend, who testified that Arnold had a gun in the victim's home and that she overheard a loud argument between Arnold and the victim; (ii) the testimony of the victim's brother, who also testified that Arnold had a gun in the victim's home and that he heard an altercation between Arnold and the victim, followed shortly by a gunshot and Arnold saying "that's what you get"; (iii) Arnold fled the scene immediately after the shooting; and (iv) the individual who Arnold claimed was the actual shooter, and who was apprehended by the police two minutes after the shooting, did not test positive for gunshot residue. The State's considerable testimonial and forensic evidence, along with the multitude of exhibits introduced below, was competent, substantial evidence for the trial court to determine, by a preponderance of the evidence, that Arnold had possessed a gun and committed second-degree murder, and to revoke Arnold's probation. See Robinson v. State, 907 So. 2d 1284, 1287 (Fla. 2d DCA 2005) ("The proper standard for finding a new law violation is whether a preponderance of the evidence establishes that the probationer committed the charged offense or offenses. 'Proof sufficient to support a

6

criminal conviction is not required to support a judge's discretionary order revoking' probation." (quoting Robinson v. State, 609 So. 2d 89, 90 (Fla. 1st DCA 1992) (citations omitted))).

Arnold's defense theory was that he was present at the scene but that he was not the shooter. Importantly, his sworn statement to the police detective was not a confession. Rather, Arnold steadfastly maintained his innocence for the shooting death of the victim, naming another individual who lived at the victim's residence as the perpetrator of the crime, giving the detective a detailed account of what Arnold claimed to have occurred before, during and after the shooting. But for the introduction of his sworn statement into evidence at the probation revocation hearing – Arnold did not testify therein – the fact finder would have had very little probative evidence before it to support Arnold's theory of events.[6]

Thus, without reaching the issue of whether the trial court erred by denying Arnold's suppression motion, given the significant incriminating evidence against Arnold, we conclude that any error in the introduction of Arnold's sworn statement at the probation revocation hearing was harmless beyond a reasonable doubt. See Stein v. State, 632 So. 2d 1361, 1365 (Fla.

---

[6] We note that the prosecutor did not rely on Arnold's sworn statement during closing argument.

1994) ("[G]iven the significant amount of other incriminating evidence in this case, we would find that the admission of Stein's statements constituted harmless error.").

*B. The Remote Sentencing Hearing*[7]

Arnold next argues that the trial court's conducting Arnold's probation violation sentencing hearing via the Zoom videoconferencing platform, over Arnold's objection, constituted a due process violation. When the trial court enters an order revoking a criminal defendant's probation, the defendant generally has a due process right to be physically present in the courtroom at the ensuing sentencing hearing. See Thompson v. State, 208 So. 3d 1183, 1187-88 (Fla. 3d DCA 2017); Fla. R. Crim. P. 3.180(a)(9) ("In all prosecutions for crime the defendant must be present[8]. . . at the imposition of sentence."). Nonetheless, "[t]he concept of due process is not rigid or static, but flexible and dynamic." Clarington v. State, 314 So. 3d 495, 501 (Fla. 3d DCA 2020). "Whether a proceeding comports with fundamental principles of due process

---

[7] "We review a claim of deprivation of procedural due process de novo." I.T. v. Dep't of Children & Families, 338 So. 3d 6, 9 (Fla. 3d DCA 2022).

[8] A defendant "is present" for the imposition of sentencing "if the defendant has a meaningful opportunity to be heard through counsel on the issues being discussed" and the defendant either "(1) is physically in attendance for the courtroom proceeding;" or "(2) waives physical attendance in writing or on the record . . . , the court accepts the waiver, and the defendant appears by audio-video communication technology." Fla. R. Crim. P. 3.180(b)(1)-(2).

depends on, and is informed by, the attendant circumstances and a balancing of the competing interests at stake." Id.; Tuttle's Design-Build, Inc., 753 So. 2d 49, 51 (2000) ("[R]ather than articulating a laundry list of specific procedures required to protect due process, the United States Supreme Court has emphasized that the protection of due process rights requires balancing the interests of the parties involved.").

The instant remote sentencing hearing occurred while the Florida Supreme Court's Administrative Order AOSC20-23 suspending rule 3.180's physical presence requirement was still in effect. Importantly, though, the Order stated in its Guiding Principles that "[t]he presiding judge in all cases must consider the constitutional rights of crime victims and criminal defendants and the public's constitutional right of access to the courts." Further, the Order clearly required the trial court, when faced with a constitutional challenge to a remote sentencing proceeding, to ensure that the remote proceeding would not infringe upon the defendant's constitutional rights:

> E. Other Trial Court Proceedings. Trial court proceedings that are not addressed under Section III.A.(1) or III.D. shall be conducted as follows during Phase 1 and Phase 2. If in-person conduct of the proceeding is required below, the proceeding may be conducted in person only if the circuit or a county within the circuit is operating in Phase 2 pursuant to Fla. Admin. Order No. AOSC20-32, as amended, in a manner that is consistent with the

9

circuit's operational plan, or as otherwise authorized under Section III.B(5)(a). or IXA.(2).

. . . .

(3) *All other trial court proceedings shall be conducted remotely, except that a proceeding shall be conducted in person if the chief judge or presiding judge, in consultation with the chief judge, determines that remote conduct of the proceeding:*

a. *Is inconsistent with the United States or Florida Constitution*, a statute, or a rule of court that has not been suspended by administrative order; or

b. Would be infeasible because the court, the clerk, or other participant in a proceeding lacks the technological resources necessary to conduct the proceeding or, for reasons directly related to the state of emergency or the public health emergency, lacks the staff resources necessary to conduct the proceeding.

Chief judges shall take all necessary steps to ensure that the above-listed proceedings are conducted to the fullest extent feasible, consistent with the guidance established in this section.

(Emphasis added). Faced with Arnold's contemporaneous procedural due process challenge to the trial court remotely conducting Arnold's sentencing proceeding, the trial court, under the attendant circumstances then presented, was required to balance Arnold's due process right to be physically present in the courtroom for sentencing against the State's "significant interest in ensuring the effective and expeditious administration

10

of justice" and "the necessities created by the threat to public health and safety posed by the novel Coronavirus." Clarington, 314 So. 3d at 507.[9]

Rather than balancing the parties' competing interests under the circumstances presented to ensure that the instant remote proceeding would comport with due process, the trial court overruled Arnold's objection to the remote sentencing proceeding primarily because the court did not see anything "unique about this case that requires an in person sentencing" and Arnold "[was] in the same position as anyone else who [was] accused of violating their probation and the hearing occurs remotely." Our record does

---

[9] In Clarington, this Court denied a defendant's petition seeking to prohibit the trial court from remotely conducting an October 16, 2020 probation violation hearing. Florida was then in the throes of a public health emergency caused by the Covid-19 pandemic. This Court determined that the trial court's conducting the proceeding remotely – in which the defendant would not be physically present in the courtroom and each participant would be at separate locations – would not violate the defendant's constitutional due process rights. 314 So. 3d at 507. Because of its procedural posture, though, Clarington expressly declined to address whether the defendant would have the constitutional right to be physically present in the courtroom at sentencing. Id. at 509, n.16.

In Gonzalez v. State, 343 So. 3d 166, 170 (Fla. 3d DCA 2022), this Court concluded that the trial court's conducting an un-objected to sentencing hearing on September 21, 2020, immediately following revocation of the defendant's probation, did not constitute fundamental error. Here, Arnold preserved his due process challenge to the remote sentencing hearing by filing an objection thereto in the lower court.

not reflect that the trial court engaged in the analysis, or made the express findings, contemplated by the Order before proceeding with Arnold's remote sentencing hearing. We, therefore, are compelled to reverse the sentencing order and remand for further proceedings.

Affirmed in part; reversed in part and remanded.

GORDO, J., specially concurring.

I concur in the majority opinion and fully agree with my colleagues that reversal is required.  At the outset, it is important to note that while courts at large were faced with incredible challenges during the pandemic, under the guidance of our Chief Justice and Chief Administrative Judges throughout the state, as well as conscientious trial judges, cases were often handled extremely effectively while ensuring rights were properly afforded, despite the difficulties presented.

I write separately to highlight my concern regarding a common occurrence during the pandemic that ought to send chills through those properly vested with ensuring that constitutional and due process rights be afforded, even in difficult times.

During the proceedings in this case, which occurred in March of 2021[10], the defendant—who was facing up to thirty years in state prison—asked to be physically present in the courtroom and objected to appearing by Zoom at the sentencing hearing.  In response, the trial court articulated

---

[10] At that time, schools in Miami-Dade were fully open, international airline travel was common and everyday retail businesses such as barber shops and salons were operating.  In fact, the Miami-Dade County Courthouse resumed holding in-person jury trials the following Monday.

that he had spoken to the administrative judge regarding the case and advised the parties of the following:

> I did go up the chain of command here. I didn't make it past [the administrative judge], who asked me one simple question. She said, what is unique about this case that requires an in person sentencing, as opposed to just a general objection to remote sentencings. I said, I didn't see anything in the order that was unique to Mr. Arnold. He's in the same position as anyone else who is accused of violating their probation and the hearing occurs remotely.

In my view, this analysis is completely inverted and contravenes the approach trial judges ought to take when faced with whether a specific emergency should continue to infringe on a defendant's constitutional rights. While the Florida Supreme Court's Administrative Order AOSC20-23 suspended Florida Rule of Criminal Procedure 3.180's physical presence requirement during the pandemic, that Order specifically proscribed that "**[t]he presiding judge in all cases must consider the constitutional rights of** crime victims and **criminal defendants** and the public's constitutional right of access to the courts." In re Comprehensive COVID-19 Emergency Measures for the Florida State Courts, Fla. Admin. Order No. AOSC20-23, Amend. 9 (Feb. 17, 2021) (emphasis added).

Under the United States and Florida Constitutions, a defendant has the constitutional due process right to be physically present at a sentencing

14

hearing.  See U.S. Const. amend. XIV, § 1 ("No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."); Art. I, § 9, Fla. Const. ("No person shall be deprived of life, liberty or property without due process of law, or be twice put in jeopardy for the same offense, or be compelled in any criminal matter to be a witness against oneself."); Dunbar v. State, 89 So. 3d 901, 907 (Fla. 2012) ("One of the most basic tenets of Florida law is the requirement that all proceedings affecting life, liberty, or property must be conducted according to due process, which includes a reasonable opportunity to be heard."); Jackson v. State, 767 So. 2d 1156, 1160 (Fla. 2000) ("[A defendant's] right to be present is based upon the long-standing principle that a defendant in a criminal case has a fundamental right, guaranteed by the Constitutions of the United States and of Florida, and explicitly provided in the Florida Rules of Criminal Procedure, to be present at sentencing, a critical stage of every criminal proceeding."); Kentucky v. Stincer, 482 U.S. 730, 745 (1987) (finding "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to

15

its outcome if his presence would contribute to the fairness of the procedure").

Further, the right to be physically present encompasses the fundamental premise that the jurist who is passing sentence upon a person ought to be in the physical presence of the corpus itself. See Doe v. State, 217 So. 3d 1020, 1026 (Fla. 2017) ("The requirement of physical presence, . . . would be meaningless if the judicial officer, or the finder of fact and ultimate decision-maker, is not also present in the hearing room."); Brown v. State, 538 So. 2d 833, 835 (Fla. 1989) ("[T]he presence of a judge during trial is a fundamental right."); Coy v. Iowa, 487 U.S. 1012, 1017 (1988) ("[T]here is something deep in human nature that regards face-to-face confrontation between accused and accuser as 'essential to a fair trial in a criminal prosecution.'" (quoting Pointer v. Texas, 380 U.S. 400, 404 (1965))). As provided by the Florida Supreme Court "[a] judicial officer should be physically present to preside over any matter that could lead to the 'massive curtailment of [an individual's] liberty.'" Doe, 217 So. 3d at 1027 (quoting Humphrey v. Cady, 405 U.S. 504, 509 (1972)). Further, Florida Rule of Criminal Procedure 3.180 defines presence as the defendant being "physically in attendance for the courtroom proceeding," which necessarily includes the right to be physically present at sentencing.

It is therefore clear that under the United States and Florida Constitutions the defendant has the right to be physically present. That right of course may be abridged based on something unique that is occurring, even perhaps a pandemic.[11] But the ability to infringe upon a defendant's constitutional right hinges on some showing by the government that abrogation of the preference for physical presence is necessary under the circumstances. See T.H. v. State, 2022 WL 16703183, at *5 (Fla. 2d DCA Nov. 4, 2022) ("The burden of persuasion is upon the party seeking to abrogate the preference for physical face-to-face confrontation."); cf. Roman Catholic Diocese of Brooklyn v. Cuomo, 208 L. Ed. 2d 206 (2020) (Gorsuch, J., concurring) ("Even if the Constitution has taken a holiday during this pandemic, it cannot become a sabbatical.").

The crux of the recurring ill in my view is that courts throughout the pandemic have equated virtual presence with that of physical presence. There is no doubt that Zoom hearings have proven to be an asset to the courts, particularly during the COVID-19 pandemic. But "technological changes in the courtroom cannot come at the expense of the basic individual

---

[11] See Crawford v. Washington, 541 U.S. 36, 67–68 (2004) (Scalia, J.) ("[The Framers] were loath to leave too much discretion in judicial hands. By replacing categorical constitutional guarantees with open-ended balancing tests, we do violence to their design.").

17

rights and freedoms secured by our constitutions." Harrell v. State, 709 So. 2d 1364, 1372 (Fla. 1998). Courts have recognized that virtual presence is not equal to physical presence for substantive matters. See Maryland v. Craig, 497 U.S. 836, 865 (1990) (Scalia, J. dissenting) ("'Live' closed-circuit television testimony, however—if it can be called hearsay at all—is surely an example of hearsay as 'a weaker substitute for live testimony,' which can be employed only when the genuine article is unavailable."); Harrell, 709 So. 2d at 1368 ("We are unwilling to develop a per se rule that would allow the vital fabric of physical presence in the trial process to be replaced at any time by an image on a screen. Perhaps the 'virtual courtroom' will someday be the norm in the coming millennium; for now, we do not conclude that virtual presence is the equivalent of physical presence for the purposes of the Confrontation Clause."); Amendment to Florida Rule of Juvenile Procedure 8.100(A), 796 So. 2d 470, 475 (Fla. 2001) ("Not simply allowing, but mandating that children attend detention hearings conducted through an audio-visual device steers us towards a sterile environment of T.V. chamber justice, and away from a system where children are aptly treated as society's most precious resource.").

As Justice Scalia emphatically wrote "a purpose of the Confrontation Clause is ordinarily to compel accusers to make their accusations in the

defendant's presence—which is not equivalent to making them in a room that contains a television set beaming electrons that portray the defendant's image. Virtual confrontation might be sufficient to protect virtual constitutional rights; I doubt whether it is sufficient to protect real ones." Order of the Supreme Court, 207 F.R.D. 89, 94 (2002) (statement of Scalia, J.). While this discussion addresses Confrontation Clause issues focused on adversarial examination during testimony, much of its concerns transfer for purposes of sentencing proceedings and physical presence at critical stages of the proceedings.

Today, common sense understanding of remote technology and social media interactions demonstrates the depersonalizing aspects of acting or speaking via a remote box at a significant distance from the individual being affected. It is far more impactful to be in the physical presence of an individual and pronounce a curtailment of their rights as opposed to doing so in their virtual presence—which is often merely an image of their face appearing in some box on a screen. During sentencing, it is not only the defendant who is afforded the opportunity to speak, but victims, next of kin and the court. These are not small matters. The drafters of our founding documents fundamentally recognized that what stood between a citizen and his government or its overreach were the rights afforded to every citizen

under our Constitution. I cannot think of a more serious matter in which those rights must be afforded than in a situation where a man will be deprived of his liberty for the next thirty years.

In sum, I view the trial court's inquiry as misplaced. The question is NOT—what is special or important about this defendant or his case warranting his entitlement to be physically present? Rather, the question IS—what necessity exists at this time to deprive this defendant of his fundamental right to be physically present at a proceeding effecting his liberty?