(Slip Opinion)                OCTOBER TERM, 2009                1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## FLORIDA *v*. POWELL

CERTIORARI TO THE SUPREME COURT OF FLORIDA

No. 08–1175.   Argued December 7, 2009—Decided February 23, 2010

In a pathmarking decision, *Miranda* v. *Arizona*, 384 U. S. 436, 471, this Court held that an individual must be "clearly informed," prior to custodial questioning, that he has, among other rights, "the right to consult with a lawyer and to have the lawyer with him during interrogation."

After arresting respondent Powell, but before questioning him, Tampa Police read him their standard *Miranda* form, stating, *inter alia*: "You have the right to talk to a lawyer before answering any of our questions" and "[y]ou have the right to use any of these rights at any time you want during this interview." Powell then admitted he owned a handgun found in a police search. He was charged with possession of a weapon by a convicted felon in violation of Florida law. The trial court denied Powell's motion to suppress his inculpatory statements, which was based on the contention that the *Miranda* warnings he received did not adequately convey his right to the presence of an attorney during questioning. Powell was convicted of the gun-possession charge, but the intermediate appellate court held that the trial court should have suppressed the statements. The Florida Supreme Court agreed. It noted that both *Miranda* and the State Constitution require that a suspect be clearly informed of the right to have a lawyer present during questioning. The advice Powell received was misleading, the court believed, because it suggested that he could consult with an attorney only before the police started to question him and did not convey his entitlement to counsel's presence throughout the interrogation.

*Held:*

1. This Court has jurisdiction to hear this case. Powell contends that jurisdiction is lacking because the Florida Supreme Court relied on the State's Constitution as well as *Miranda,* hence the decision

rested on an adequate and independent state ground. See *Coleman* v. *Thompson*, 501 U. S. 722, 729. Under *Michigan* v. *Long*, 463 U. S. 1032, 1040–1041, however, when a state court decision fairly appears to rest primarily on federal law, or to be interwoven with federal law, and the adequacy and independence of any possible state-law ground is not clear from the face of its opinion, this Court presumes that federal law controlled the state court's decision. Although invoking Florida's Constitution and precedent in addition to this Court's decisions, the Florida court did not expressly assert that state-law sources gave Powell rights distinct from, or broader than, those delineated in *Miranda.* See *Long*, 463 U. S., at 1044. The state-court opinion consistently trained on what *Miranda* demands, rather than on what Florida law independently requires. This Court therefore cannot identify, "from the face of the opinion," a clear statement that the decision rested on a state ground separate from *Miranda.* See *Long*, 463 U. S., at 1041. Because the opinion does not "indicat[e] clearly and expressly that it is alternatively based on bona fide separate, adequate, and independent [state] grounds," *Long,* 463 U. S., at 1041, this Court has jurisdiction. Pp. 4–7.

2. Advice that a suspect has "the right to talk to a lawyer before answering any of [the law enforcement officers'] questions," and that he can invoke this right "at any time . . . during th[e] interview," satisfies *Miranda.* Pp. 7–13.

(a) *Miranda* requires that a suspect "be warned prior to any questioning . . . that he has the right to the presence of an attorney." 384 U. S., at 479. This *Miranda* warning addresses the Court's particular concern that "[t]he circumstances surrounding in-custody interrogation can operate very quickly to overbear the will of one merely made aware of his privilege [to remain silent] by his interrogators." *Id.*, at 469. Responsive to that concern, the Court stated, as "an absolute prerequisite to interrogation," that an individual held for questioning "must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation." *Id.*, at 471. While the warnings prescribed by *Miranda* are invariable, this Court has not dictated the words in which the essential information must be conveyed. See, *e.g., California* v. *Prysock*, 453 U. S. 355, 359. In determining whether police warnings were satisfactory, reviewing courts are not required to "examine [them] as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably 'conve[y] to [a suspect] his rights as required by *Miranda.*'" *Duckworth* v. *Eagan*, 492 U. S. 195, 203. Pp. 7–9.

(b) The warnings Powell received satisfy this standard. By informing Powell that he had "the right to talk to a lawyer before an-

swering any of [their] questions," the Tampa officers communicated that he could consult with a lawyer before answering any particular question. And the statement that Powell had "the right to use any of [his] rights at any time [he] want[ed] during th[e] interview" confirmed that he could exercise his right to an attorney while the interrogation was underway. In combination, the two warnings reasonably conveyed the right to have an attorney present, not only at the outset of interrogation, but at all times. To reach the opposite conclusion, *i.e.,* that the attorney would not be present throughout the interrogation, the suspect would have to imagine the counterintuitive and unlikely scenario that, in order to consult counsel, he would be obliged to exit and reenter the interrogation room between each query. Likewise unavailing is the Florida Supreme Court's conclusion that the warning was misleading because the temporal language that Powell could "talk to a lawyer before answering any of [the officers'] questions" suggested he could consult with an attorney only before the interrogation started. In context, the term "before" merely conveyed that Powell's right to an attorney became effective before he answered any questions at all. Nothing in the words used indicated that counsel's presence would be restricted after the questioning commenced. Powell suggests that today's holding will tempt law enforcement agencies to end-run *Miranda* by amending their warnings to introduce ambiguity. But, as the Federal Government explains, it is in law enforcement's own interest to state warnings with maximum clarity in order to reduce the risk that a court will later find the advice inadequate and therefore suppress a suspect's statement. The standard warnings used by the Federal Bureau of Investigation are admirably informative, but the Court declines to declare their precise formulation necessary to meet *Miranda*'s requirements. Different words were used in the advice Powell received, but they communicated the same message. Pp. 9–13.

998 So. 2d 531, reversed and remanded.

GINSBURG, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, KENNEDY, THOMAS, ALITO, and SOTOMAYOR, JJ., joined, and in which BREYER, J., joined as to Part II. STEVENS, J., filed a dissenting opinion, in which BREYER, J., joined as to Part II.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———

No. 08–1175

———

## FLORIDA, PETITIONER *v.* KEVIN DEWAYNE POWELL

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF FLORIDA

[February 23, 2010]

JUSTICE GINSBURG delivered the opinion of the Court.

In a pathmarking decision, *Miranda* v. *Arizona,* 384 U. S. 436, 471 (1966), the Court held that an individual must be "clearly informed," prior to custodial questioning, that he has, among other rights, "the right to consult with a lawyer and to have the lawyer with him during interrogation." The question presented in this case is whether advice that a suspect has "the right to talk to a lawyer before answering any of [the law enforcement officers'] questions," and that he can invoke this right "at any time . . . during th[e] interview," satisfies *Miranda.* We hold that it does.

I

On August 10, 2004, law enforcement officers in Tampa, Florida, seeking to apprehend respondent Kevin Dewayne Powell in connection with a robbery investigation, entered an apartment rented by Powell's girlfriend. 969 So. 2d 1060, 1063 (Fla. App. 2007). After spotting Powell coming from a bedroom, the officers searched the room and discovered a loaded nine-millimeter handgun under the bed. *Ibid.*

The officers arrested Powell and transported him to the

Tampa Police headquarters. *Ibid.* Once there, and before asking Powell any questions, the officers read Powell the standard Tampa Police Department Consent and Release Form 310. *Id.*, at 1063–1064. The form states:

> "You have the right to remain silent. If you give up the right to remain silent, anything you say can be used against you in court. You have the right to talk to a lawyer before answering any of our questions. If you cannot afford to hire a lawyer, one will be appointed for you without cost and before any questioning. You have the right to use any of these rights at any time you want during this interview." App. 3. See also 969 So. 2d, at 1064.

Acknowledging that he had been informed of his rights, that he "underst[oo]d them," and that he was "willing to talk" to the officers, Powell signed the form. App. 3. He then admitted that he owned the handgun found in the apartment. Powell knew he was prohibited from possessing a gun because he had previously been convicted of a felony, but said he had nevertheless purchased and carried the firearm for his protection. See 969 So. 2d, at 1064; App. 29.

Powell was charged in state court with possession of a weapon by a prohibited possessor, in violation of Fla. Stat. Ann. §790.23(1) (West 2007). Contending that the *Miranda* warnings were deficient because they did not adequately convey his right to the presence of an attorney during questioning, he moved to suppress his inculpatory statements. The trial court denied the motion, concluding that the officers had properly notified Powell of his right to counsel. 969 So. 2d, at 1064; App. 28. A jury convicted Powell of the gun-possession charge. 969 So. 2d, at 1064.

On appeal, the Florida Second District Court of Appeal held that the trial court should have suppressed Powell's statements. *Id.*, at 1067. The *Miranda* warnings, the

appellate court concluded, did not "adequately inform [Powell] of his . . . right to have an attorney present throughout [the] interrogation." 969 So. 2d, at 1063. Considering the issue to be "one of great public importance," the court certified the following question to the Florida Supreme Court:

> "Does the failure to provide express advice of the right to the presence of counsel during questioning vitiate *Miranda* warnings which advise of both (A) the right to talk to a lawyer 'before questioning' and (B) the 'right to use' the right to consult a lawyer 'at any time' during questioning?" *Id.*, at 1067–1068 (some capitalization omitted).

Surveying decisions of this Court as well as Florida precedent, the Florida Supreme Court answered the certified question in the affirmative. 998 So. 2d 531, 532 (2008). "Both *Miranda* and article I, section 9 of the Florida Constitution,"[1] the Florida High Court noted, "require that a suspect be clearly informed of the right to have a lawyer present during questioning." *Id.*, at 542. The court found that the advice Powell received was misleading because it suggested that Powell could "only consult with an attorney before questioning" and did not convey Powell's entitlement to counsel's presence throughout the interrogation. *Id.*, at 541. Nor, in the court's view, did the final catchall warning—"[y]ou have the right to use any of these rights at any time you want during this interview"— cure the defect the court perceived in the right-to-counsel advice: "The catch-all phrase did not supply the missing warning of the right to have counsel present during police questioning," the court stated, for "a right that has never been expressed cannot be reiterated." *Ibid.*

---

[1] Article I, §9 of the Florida Constitution states that "[n]o person shall . . . be compelled in any criminal matter to be a witness against oneself."

Justice Wells dissented.  He considered it "unreasonable to conclude that the broad, unqualified language read to Powell would lead a person of ordinary intelligence to believe that he or she had a limited right to consult with an attorney that could only be exercised before answering the *first* question posed by law enforcement."  *Id.*, at 544. The final sentence of the warning, he stressed, "avoid[ed] the implication—unreasonable as it may [have] be[en]— that advice concerning the right of access to counsel *before* questioning conveys the message that access to counsel is foreclosed *during* questioning."  *Ibid.* (internal quotation marks omitted).   Criticizing the majority's "technical adherence to language . . . that has no connection with whether the person who confessed understood his or her rights," *id.*, at 545, he concluded that "[t]he totality of the warning reasonably conveyed to Powell his continuing right of access to counsel," *id.*, at 544.

We granted certiorari, 557 U. S. ___ (2009), and now reverse the judgment of the Florida Supreme Court.

## II

We first address Powell's contention that this Court lacks jurisdiction to hear this case because the Florida Supreme Court, by relying not only on *Miranda* but also on the Florida Constitution, rested its decision on an adequate and independent state ground.   Brief for Petitioner 15–23.  See *Coleman* v. *Thompson*, 501 U. S. 722, 729 (1991) ("This Court will not review a question of federal law decided by a state court if the decision . . . rests on a state law ground that is independent of the federal question and adequate to support the judgment.").   "It is fundamental," we have observed, "that state courts be left free and unfettered by us in interpreting their state constitutions."  *Minnesota* v. *National Tea Co.*, 309 U. S. 551, 557 (1940).  "But it is equally important that ambiguous or obscure adjudications by state courts do not stand as

barriers to a determination by this Court of the validity under the federal constitution of state action." *Ibid.*

To that end, we announced, in *Michigan* v. *Long*, 463 U. S. 1032, 1040–1041 (1983), the following presumption:

> "[W]hen . . . a state court decision fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion, we will accept as the most reasonable explanation that the state court decided the case the way it did because it believed that federal law required it to do so."

At the same time, we adopted a plain-statement rule to avoid the presumption: "If the state court decision indicates clearly and expressly that it is alternatively based on bona fide separate, adequate, and independent grounds, we, of course, will not undertake to review the decision." *Id.*, at 1041.[2]

Under the *Long* presumption, we have jurisdiction to entertain this case. Although invoking Florida's Constitution and precedent in addition to this Court's decisions, the Florida Supreme Court treated state and federal law as interchangeable and interwoven; the court at no point

_____

[2] Dissenting in *Michigan* v. *Long*, 463 U. S. 1032 (1983), JUSTICE STEVENS did not urge, as he now does, inspection of state-court decisions to count the number of citations to state and federal provisions and opinions, or heroic efforts to fathom what the state court really meant. See *post*, at 3–7 (dissenting opinion). Instead, his preferred approach was as clear as the Court's. In lieu of "presuming that adequate state grounds are *not* independent unless it clearly appears otherwise," he would have "presum[ed] that adequate state grounds are independent unless it clearly appears otherwise." *Long*, 463 U. S., at 1066; see *post*, at 2, n. 1. Either presumption would avoid arduous efforts to detect, case by case, whether a state ground of decision is truly "independent of the [state court's] understanding of federal law." *Long*, 463 U. S., at 1066. Today, however, the dissent would require this Court to engage in just that sort of inquiry.

expressly asserted that state-law sources gave Powell rights distinct from, or broader than, those delineated in *Miranda.* See *Long*, 463 U. S., at 1044.

Beginning with the certified question—whether the advice the Tampa police gave to Powell "vitiate[d] *Miranda*," 998 So. 2d, at 532 (some capitalization omitted)—and continuing throughout its opinion, the Florida Supreme Court trained on what *Miranda* demands, rather than on what Florida law independently requires. See, *e.g.,* 998 So. 2d, at 533 ("The issue before this Court is whether the failure to provide express advice of the right to the presence of counsel during custodial interrogation violates the principles espoused in *Miranda v. Arizona*, 384 U. S. 436."); *id.*, at 538 ("[T]he issue of [what] *Miranda* requires . . . has been addressed by several of the Florida district courts of appeal."); *id.*, at 542 (Powell received a "narrower and less functional warning than that required by *Miranda*.").[3]  We therefore cannot identify, "from the face of the opinion," a clear statement that the decision rested on a state ground separate from *Miranda.* See *Long*, 463 U. S., at 1041 (the state court "need only make clear by a plain statement in its judgment or opinion that the federal cases are being used only for the purpose of guidance, and do not themselves compel the result that the court has reached").[4]  "To avoid misunderstanding, the

--------

[3] JUSTICE STEVENS suggests that these statements refer to *Miranda* only in a "generic" sense to mean "the warnings suspects must be given before interrogation." *Post*, at 6.  This explanation fails to account for the Florida Supreme Court's repeated citations to the *opinion* in *Miranda.*  In context, it is obvious that the court was attempting to home in on what that opinion—which, of course, interpreted only the Federal Constitution and not Florida law—requires.  See, *e.g.*, 998 So. 2d 531, 533, 534, 537, 538, 539, 540, 541, 542 (2008).

[4] JUSTICE STEVENS agrees that the Florida Supreme Court's decision is interwoven with federal law, *post*, at 7, and lacks the plain statement contemplated by *Long*, *post*, at 3.  Nevertheless, he finds it possible to discern an independent state-law basis for the decision.  As *Long* makes

[Florida] Supreme Court must itself speak with the clarity it sought to require of its State's police officers." *Ohio* v. *Robinette*, 519 U. S. 33, 45 (1996) (GINSBURG, J., concurring in judgment).

Powell notes that "'state courts are absolutely free to interpret state constitutional provisions to accord greater protection to individual rights than do similar provisions of the United States Constitution.'" Brief for Respondent 19–20 (quoting *Arizona* v. *Evans*, 514 U. S. 1, 8 (1995)). See also, *e.g.*, *Oregon* v. *Hass*, 420 U. S. 714, 719 (1975); *Cooper* v. *California*, 386 U. S. 58, 62 (1967). Powell is right in this regard. Nothing in our decision today, we emphasize, trenches on the Florida Supreme Court's authority to impose, based on the State's Constitution, any additional protections against coerced confessions it deems appropriate. But because the Florida Supreme Court's decision does not "indicat[e] clearly and expressly that it is alternatively based on bona fide separate, adequate, and independent [state] grounds," *Long*, 463 U. S., at 1041, we have jurisdiction to decide this case.

## III
### A

To give force to the Constitution's protection against compelled self-incrimination, the Court established in *Miranda* "certain procedural safeguards that require

---

clear, however, "when . . . [the] state court decision fairly appears to . . . be interwoven with . . . federal law," the only way to avoid the jurisdictional presumption is to provide a plain statement expressing independent reliance on state law. 463 U. S., at 1040. It is this plain statement that makes "the adequacy and independence of any possible state law ground . . . clear from the face of the opinion." *Id.*, at 1040–1041. See also *Ohio* v. *Robinette*, 519 U. S. 33, 44 (1996) (GINSBURG, J., concurring in judgment) ("*Long* governs even when, all things considered, the more plausible reading of the state court's decision may be that the state court did not regard the Federal Constitution alone as a sufficient basis for its ruling.").

police to advise criminal suspects of their rights under the Fifth and Fourteenth Amendments before commencing custodial interrogation." *Duckworth* v. *Eagan*, 492 U. S. 195, 201 (1989). Intent on "giv[ing] concrete constitutional guidelines for law enforcement agencies and courts to follow," 384 U. S., at 441–442, *Miranda* prescribed the following four now-familiar warnings:

> "[A suspect] must be warned prior to any questioning [1] that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, and [4] that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Id.*, at 479.

*Miranda*'s third warning—the only one at issue here—addresses our particular concern that "[t]he circumstances surrounding in-custody interrogation can operate very quickly to overbear the will of one merely made aware of his privilege [to remain silent] by his interrogators." *Id.*, at 469. Responsive to that concern, we stated, as "an absolute prerequisite to interrogation," that an individual held for questioning "must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation." *Id.*, at 471. The question before us is whether the warnings Powell received satisfied this requirement.

The four warnings *Miranda* requires are invariable, but this Court has not dictated the words in which the essential information must be conveyed. See *California* v. *Prysock*, 453 U. S. 355, 359 (1981) *(per curiam)* ("This Court has never indicated that the rigidity of *Miranda* extends to the precise formulation of the warnings given a criminal defendant." (internal quotation marks omitted)); *Rhode Island* v. *Innis*, 446 U. S. 291, 297 (1980) (safeguards against self-incrimination include "*Miranda* warn-

ings . . . or their equivalent"). In determining whether police officers adequately conveyed the four warnings, we have said, reviewing courts are not required to examine the words employed "as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably 'conve[y] to [a suspect] his rights as required by *Miranda.*'" *Duckworth*, 492 U. S., at 203 (quoting *Prysock*, 453 U. S., at 361).

## B

Our decisions in *Prysock* and *Duckworth* inform our judgment here. Both concerned a suspect's entitlement to adequate notification of the right to appointed counsel. In *Prysock*, an officer informed the suspect of, *inter alia*, his right to a lawyer's presence during questioning and his right to counsel appointed at no cost. 453 U. S., at 356– 357. The Court of Appeals held the advice inadequate to comply with *Miranda* because it lacked an express statement that the appointment of an attorney would occur prior to the impending interrogation. See 453 U. S., at 358–359. We reversed. *Id.*, at 362. "[N]othing in the warnings," we observed, "suggested any limitation on the right to the presence of appointed counsel different from the clearly conveyed rights to a lawyer in general, including the right to a lawyer before [the suspect is] questioned, . . . while [he is] being questioned, and all during the questioning." *Id.*, at 360–361 (internal quotation marks omitted).

Similarly, in *Duckworth*, we upheld advice that, in relevant part, communicated the right to have an attorney present during the interrogation and the right to an appointed attorney, but also informed the suspect that the lawyer would be appointed "if and when [the suspect goes] to court." 492 U. S., at 198 (emphasis deleted; internal quotation marks omitted). "The Court of Appeals thought th[e] 'if and when you go to court' language suggested that

only those accused who can afford an attorney have the right to have one present before answering any questions." *Id.*, at 203 (some internal quotation marks omitted). We thought otherwise. Under the relevant state law, we noted, "counsel is appointed at [a] defendant's initial appearance in court." *Id.,* at 204. The "if and when you go to court" advice, we said, "simply anticipate[d]" a question the suspect might be expected to ask after receiving *Miranda* warnings, *i.e.*, "*when* [will he] obtain counsel." 492 U. S., at 204. Reading the "if and when" language together with the other information conveyed, we held that the warnings, "in their totality, satisfied *Miranda.*" *Id.*, at 205.

We reach the same conclusion in this case. The Tampa officers did not "entirely omi[t]," *post*, at 9, any information *Miranda* required them to impart. They informed Powell that he had "the right to talk to a lawyer before answering any of [their] questions" and "the right to use any of [his] rights at any time [he] want[ed] during th[e] interview." App. 3. The first statement communicated that Powell could consult with a lawyer before answering any particular question, and the second statement confirmed that he could exercise that right while the interrogation was underway. In combination, the two warnings reasonably conveyed Powell's right to have an attorney present, not only at the outset of interrogation, but at all times.[5]

_____

[5] JUSTICE STEVENS asserts that the Court today approves, for "the first time[,] . . . a warning which, if given its natural reading, entirely omitted an essential element of a suspect's rights." *Post*, at 9. See also *post*, at 12 ("[T]he warning entirely failed to inform [Powell] of the separate and distinct right 'to have counsel present during any questioning.'"). We find the warning in this case adequate, however, only because it communicated just what *Miranda* prescribed. JUSTICE STEVENS ascribes a different meaning to the warning Powell received, but he cannot credibly suggest that *the Court* regards the warning to have omitted a vital element of Powell's rights.

To reach the opposite conclusion, *i.e.*, that the attorney would not be present throughout the interrogation, the suspect would have to imagine an unlikely scenario: To consult counsel, he would be obliged to exit and reenter the interrogation room between each query. A reasonable suspect in a custodial setting who has just been read his rights, we believe, would not come to the counterintuitive conclusion that he is obligated, or allowed, to hop in and out of the holding area to seek his attorney's advice.[6] Instead, the suspect would likely assume that he must stay put in the interrogation room and that his lawyer would be there with him the entire time.[7]

The Florida Supreme Court found the warning misleading because it believed the temporal language—that Powell could "talk to a lawyer before answering any of [the officers'] questions"—suggested Powell could consult with an attorney only before the interrogation started. 998 So. 2d, at 541. See also Brief for Respondent 28–29. In context, however, the term "before" merely conveyed when Powell's right to an attorney became effective—namely, before he answered any questions at all. Nothing in the words used indicated that counsel's presence would be restricted after the questioning commenced. Instead, the warning communicated that the right to counsel carried forward to and through the interrogation: Powell could seek his attorney's advice before responding to "*any* of [the officers'] questions" and "*at any time . . . during* th[e]

_____

[6] It is equally unlikely that the suspect would anticipate a scenario of this order: His lawyer would be admitted into the interrogation room each time the police ask him a question, then ushered out each time the suspect responds.

[7] Although it does not bear on our decision, Powell seems to have understood the warning this way. The following exchange between Powell and his attorney occurred when Powell testified at his trial:

"Q. You waived the right to have an attorney present during your questioning by detectives; is that what you're telling this jury?

"A. Yes." App. 80.

interview." App. 3 (emphasis added). Although the warn-
ings were not the *clearest possible* formulation of
*Miranda*'s right-to-counsel advisement, they were suffi-
ciently comprehensive and comprehensible when given a
commonsense reading.

Pursuing a different line of argument, Powell points out
that most jurisdictions in Florida and across the Nation
expressly advise suspects of the right to have counsel
present both before and during interrogation. Brief for
Respondent 41–44. If we find the advice he received ade-
quate, Powell suggests, law enforcement agencies, hoping
to obtain uninformed waivers, will be tempted to end-run
*Miranda* by amending their warnings to introduce ambi-
guity. Brief for Respondent 50–53. But as the United
States explained as *amicus curiae* in support of the State
of Florida, "law enforcement agencies have little reason to
assume the litigation risk of experimenting with novel
*Miranda* formulations," Brief for United States as *Amicus
Curiae* 6; instead, it is "desirable police practice" and "in
law enforcement's own interest" to state warnings with
maximum clarity, *id.*, at 12. See also *id.*, at 11 ("By using
a conventional and precise formulation of the warnings,
police can significantly reduce the risk that a court will
later suppress the suspect's statement on the ground that
the advice was inadequate.").

For these reasons, "all . . . federal law enforcement
agencies explicitly advise . . . suspect[s] of the full contours
of each *[Miranda]* right, including the right to the pres-
ence of counsel during questioning." *Id.*, at 12. The stan-
dard warnings used by the Federal Bureau of Investiga-
tion are exemplary. They provide, in relevant part: "You
have the right to talk to a lawyer for advice before we ask
you any questions. You have the right to have a lawyer
with you during questioning." *Ibid.*, n. 3 (internal quota-
tion marks omitted). This advice is admirably informa-
tive, but we decline to declare its precise formulation

necessary to meet *Miranda*'s requirements.　Different words were used in the advice Powell received, but they communicated the same essential message.

\*　\*　\*

For the reasons stated, the judgment of the Supreme Court of Florida is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

No. 08–1175

FLORIDA, PETITIONER *v.* KEVIN DEWAYNE POWELL

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF
FLORIDA

[February 23, 2010]

JUSTICE STEVENS, with whom JUSTICE BREYER joins as
to Part II, dissenting.

Today, the Court decides a case in which the Florida
Supreme Court held a local police practice violated the
Florida Constitution. The Court's power to review that
decision is doubtful at best; moreover, the Florida Su-
preme Court has the better view on the merits.

I

In this case, the Florida Supreme Court concluded that
"[b]oth *Miranda* and article I, section 9 of the Florida
Constitution require that a suspect be clearly informed of
the right to have a lawyer present during questioning,"
and that the warnings given to Powell did not satisfy
either the State or the Federal Constitution. 998 So. 2d
531, 542 (2008). In my view, the Florida Supreme Court
held on an adequate and independent state-law ground
that the warnings provided to Powell did not sufficiently
inform him of the "'right to a lawyer's help'" under the
Florida Constitution, *id.*, at 535. This Court therefore
lacks jurisdiction to review the judgment below, notwith-
standing the failure of that court to include some express
sentence that would satisfy this Court's "plain-statement
rule," *ante*, at 5.

The adequate-and-independent-state-ground doctrine
rests on two "cornerstones": "[r]espect for the independ-

ence of state courts" and "avoidance of rendering advisory opinions." *Michigan* v. *Long*, 463 U. S. 1032, 1040 (1983). In *Long*, the Court adopted a novel presumption in favor of jurisdiction when the independence of a state court's state-law judgment is not clear. But we only respect the independence of state courts and avoid rendering advisory opinions if we limit the application of that presumption to truly ambiguous cases.[1] This is not such a case.

"[I]f the same judgment would be rendered by the state court after we corrected its views of federal laws, our review could amount to nothing more than an advisory opinion." *Herb* v. *Pitcairn*, 324 U. S. 117, 126 (1945). In *Long* we advised every state court of a formula by which it could assure us that our review would indeed amount to nothing more than an advisory opinion. The state court "need only make clear by a plain statement in its judgment or opinion that the federal cases are being used only for the purpose of guidance, and do not themselves compel the result that the court has reached." 463 U. S*.,* at 1041. That advice has sometimes been misunderstood as a command that unless such a plain statement is included in a state-court opinion, the court's ruling cannot have rested on an adequate and independent state ground. But the real question is whether "the adequacy and independence of any possible state law ground is . . . clear from the face

_____

[1] In my view, this Court would better respect the independence of state courts by applying the opposite presumption, as it did in the years prior to 1983. See *Long*, 463 U. S., at 1066–1067 (STEVENS, J., dissenting). But accepting *Long* as the law, we can limit its negative effects— unnecessary intrusion into the business of the state courts and unnecessary advisory opinions—only if we limit its application to cases in which the independence of the state-law ground is in serious doubt. See *Pennsylvania* v. *Labron*, 518 U. S. 938, 950 (1996) (STEVENS, J., dissenting) ("[T]he unfortunate effects of [its] rule" are "exacerbate[d] . . . to a nearly intolerable degree" when the *Long* presumption is applied to cases in which "the state-law ground supporting th[e] judgmen[t] is so much clearer than has been true on most prior occasions").

of the opinion." *Id.*, at 1040–1041. Even if a state court opinion does not include the magic words set forth in *Long*, or some similarly explicit sentence, we lack jurisdiction if it is nonetheless apparent that the decision is indeed supported by an adequate and independent state ground. Contrary to the assumption made by the Court, we have no power to assume jurisdiction that does not otherwise exist simply because the Florida Supreme Court did not include in its decision some express statement that its interpretation of state law is independent.

In my view, we can tell from the face of the Florida Supreme Court's opinion that "the decision rested on a state ground separate from *Miranda*," *ante*, at 6. This case is easily distinguished from *Long* in that regard. In *Long*, although the Michigan Supreme Court had twice cited the Michigan Constitution in its opinion, it "relied *exclusively* on its understanding of *Terry* [v. *Ohio*, 392 U. S. 1 (1968),] and other federal cases. Not a single state case was cited to support the state court's holding that the search of the passenger compartment was unconstitutional." 463 U. S.*,* at 1043. There was, in short, nothing to "indicate that the decision below rested on grounds in any way *independent* from the state court's interpretation of federal law." *Id.,* at 1044.

Other cases in which we have applied the *Long* presumption have been similarly devoid of independent state-law analysis. We typically apply the *Long* presumption when the state court's decision cited a state constitutional provision only a few times or not at all, and rested exclusively upon federal cases or upon state cases that themselves cited only federal law.[2] We have also applied *Long*

————————

[2] See, *e.g.*, *Illinois* v. *Fisher*, 540 U. S. 544, 547, n. (2004) *(per curiam)* (describing decision below as relying upon the portion of a state precedent that solely discussed due process under the Federal Constitution); *Ohio* v. *Robinette*, 519 U. S. 33, 37 (1996) ("[T]he only cases [the opinion] discusses or even cites are federal cases, except for one state case

when the state court's decision indicated that under state law, the relevant state constitutional provision is considered coextensive with the federal one.[3]  This case shares none of those features.[4]

_____

which itself applies the Federal Constitution"); *Illinois* v. *Rodriguez*, 497 U. S. 177, 182 (1990) ("The opinion does not rely on (or even mention) any specific provision of the Illinois Constitution, nor even the Illinois Constitution generally.  Even the Illinois cases cited by the opinion rely on no constitutional provisions other than the Fourth and Fourteenth Amendments of the United States Constitution"); *Florida* v. *Riley*, 488 U. S. 445, 448, n. 1 (1989) (plurality opinion) (finding Florida Supreme Court mentioned the State Constitution three times but the discussion "focused exclusively on federal cases dealing with the Fourth Amendment"); *Michigan* v. *Chesternut*, 486 U. S. 567, 571, n. 3 (1988) (describing state court as resting its holding on two state cases that each relied upon federal law); *New York* v. *P. J. Video, Inc.*, 475 U. S. 868, 872, n. 4 (1986) ("Here, the New York Court of Appeals cited the New York Constitution only once, near the beginning of its opinion . . . [and] repeatedly referred to the 'First Amendment' and 'Fourth Amendment' during its discussion of the merits of the case"); *Oliver* v. *United States*, 466 U. S. 170, 175, n. 5 (1984) ("The Maine Supreme Judicial court referred only to the Fourth Amendment . . . [and] the prior state cases that the court cited also construed the Federal Constitution").

[3] See, *e.g.*, *Fitzgerald* v. *Racing Assn. of Central Iowa*, 539 U. S. 103, 106 (2003) ("The Iowa Supreme Court's opinion . . . says that 'Iowa courts are to "apply the same analysis in considering the state equal protection clause as . . . in considering the federal equal protection claim"'"); *Pennsylvania* v. *Muniz*, 496 U. S. 582, 588, n. 4 (1990) (state court explained that relevant state constitutional provision "offers a protection against self-incrimination identical to that provided by the Fifth Amendment" (internal quotation marks omitted)); *Maryland* v. *Garrison,* 480 U. S. 79, 83–84 (1987) (state-court opinion relied on state cases but indicated "that the Maryland constitutional provision is construed *in pari materia* with the Fourth Amendment").

[4] I do not mean to suggest that this Court has never reached out beyond these bounds in order to decide a case.  For example, in *Labron*, 518 U. S. 938, we found that a state court decision resting on the "Commonwealth's jurisprudence of the automobile exception," *Commonwealth* v. *Labron*, 543 Pa. 86, 100, 669 A. 2d 917, 924 (1995), was not so clearly based on state law that the *Long* presumption did not apply, even though only "some" of the state cases discussed in the state

The Florida Supreme Court did not merely cite the Florida Constitution a time or two without state-law analysis.[5]   Rather, the court discussed and relied on the separate rights provided under Art. I, §9 of the Florida Constitution.  For example, after a paragraph describing the general scope of *Miranda* warnings under federal law, the Court explained the general scope of warnings under state law.  998 So. 2d, at 534–535 ("[T]o ensure the voluntariness of confessions as required by article I, section 9 of the Florida Constitution, this Court in *Traylor* v. *State*, 596 So. 2d 957 (Fla. 1992), outlined the . . . rights Florida suspects must be told of prior to custodial interrogation," which includes "'that they have a right to a lawyer's help'").  The court consistently referred to these state-law rights as separate and distinct from *Miranda*, noting that in its earlier cases, it had explained that "the requirements of both the Fifth Amendment, as explained in *Miranda*, and the Florida Constitution, as explained in *Traylor*," include "the requirement that a suspect be informed of the right to have counsel present during questioning."  998 So. 2d, at 537–538.  And when applying the law to the specific facts of this case, the Florida Supreme Court again invoked the specific and distinct "right to a

—————

court's opinion analyzed federal law.  518 U. S., at 939.  The Court's analysis proved wrong; on remand, the Pennsylvania Supreme Court reaffirmed its prior holding and "explicitly note[d] that it was, in fact, decided upon independent grounds, i.e., Article I, Section 8 of the Pennsylvania Constitution."  *Commonwealth* v. *Labron*, 547 Pa. 344, 345, 690 A. 2d 228 (1997).  That we have overreached before is no reason to repeat the mistake again.

 [5] In examining what the state-court opinion said regarding state law, and whether the state precedent cited in the opinion relied upon state law, I am undertaking no effort more arduous than what the Court has typically undertaken in order to determine whether the *Long* presumption applies: examining how frequently a state-court opinion cited state law, whether state law is coextensive with federal law, and whether the cited state cases relied upon federal law.  See nn. 2–3, *supra.*

lawyer's help" under the Florida Constitution. *Id.*, at 540.

Moreover, the state cases relied upon by the Florida Supreme Court did not themselves rely exclusively on federal law. The primary case relied upon for the state-law holding, *Traylor*, rested exclusively upon state law. See 596 So. 2d, at 961. In that decision, the Florida Supreme Court embraced the principle that "[w]hen called upon to decide matters of fundamental rights, Florida's state courts are bound under federalist principles to give primacy to our state Constitution and to give independent legal import to every phrase and clause contained therein." *Id.*, at 962. Elaborating upon the meaning of Art. I, §9 of the Florida Constitution, the Florida Supreme Court explained the roots of Florida's commitment to protecting its citizens from self-incrimination. Florida has long "required as a matter of state law that one charged with a crime be informed of his rights prior to rendering a confession." *Id.*, at 964. It has required warnings before some interrogations since at least 1889, and has for that long excluded confessions obtained in violation of those rules. *Ibid.* In sum, this case looks quite different from those cases in which we have applied the *Long* presumption in the past.

The Court concludes otherwise by relying primarily upon the formulation of the certified question and restatements of that question within the Florida Supreme Court's opinion. See *ante*, at 6. Yet while the certified question asks whether particular phrases "vitiate[d] *Miranda* warnings," 998 So. 2d, at 532 (capitalization and footnote omitted), *Miranda* has become a generic term to refer to the warnings suspects must be given before interrogation, see Merriam-Webster's Collegiate Dictionary 792 (11th ed. 2003) (defining "Miranda" as "of, relating to, or being the legal rights of an arrested person to have an attorney and to remain silent so as to avoid self-incrimination"). Thus, its invocation of *Miranda* in the

certified question and in its statement of the issue presented is entirely consistent with the fact that the state-law basis for its decision is fully adequate and independent.

That said, I agree with the Court that the decision below is interwoven with federal law. In reaching its state-law holding, the Florida Supreme Court found *Miranda* and our other precedents instructive.[6] But that alone is insufficient to assure our jurisdiction, even under *Long*. In my view, the judgment—reversal of Powell's conviction—is supported by the Florida Supreme Court's independent and carefully considered holding that these warnings were inadequate under the Florida Constitution. See 998 So. 2d, at 534–535, 537–538, 540, 542.

The Court acknowledges that nothing in today's decision "trenches on the Florida Supreme Court's authority to impose, based on the State's Constitution, any additional protections against coerced confessions it deems appropriate." *Ante*, at 7. As the Florida Supreme Court has noted on more than one occasion, its interpretation of the Florida Constitution's privilege against self-incrimination need not track our construction of the parallel provision in the

_____

[6] The Florida Supreme Court need not have decided that state-law sources "gave Powell rights . . . broader than . . . those delineated in *Miranda*," *ante*, at 6, in order for its judgment to have rested upon an independent state-law ground. The independence of a state-law ground may be especially clear when a state court explicitly finds that the state constitution is more protective of a certain right than the national charter, but a state constitutional provision is no less independent for providing the same protection in a given case as does the federal provision, so long as the content of the state-law right is not compelled by or dependent upon federal law. Unlike other provisions of Art. I of the Florida Constitution, §9 does not contain an express proviso requiring that the right be construed in conformity with the analogous federal provision. Compare Fla. Const., Art. I, §9, with Fla. Const., Art I, §12. Furthermore, under Florida law the scope of Art. I, §9 is clearly not dependent upon federal law. *Rigterink* v. *State*, 2 So. 3d 221, 241 (Fla. 2009); *Traylor* v. *State*, 596 So. 2d 957, 962 (Fla. 1992).

Federal Constitution. See *Rigterink* v. *State*, 2 So. 3d 221, 241 (2009) ("[T]he federal Constitution sets the floor, not the ceiling, and this Court retains the ability to interpret the right against self-incrimination afforded by the Florida Constitution more broadly than that afforded by its federal counterpart"); *Traylor*, 596 So. 2d, at 961–963. In this very case, the Florida Supreme Court may reinstate its judgment upon remand. If the Florida Supreme Court does so, as I expect it will, this Court's opinion on the merits will qualify as the sort of advisory opinion that we should studiously seek to avoid.

## II

The Court's decision on the merits is also unpersuasive. As we recognized in *Miranda*, "the right to have counsel present at [an] interrogation is indispensable to the protection of the Fifth Amendment privilege." *Miranda* v. *Arizona*, 384 U. S. 436, 469 (1966). Furthermore, "the need for counsel to protect the Fifth Amendment privilege comprehends not merely a right to consult with counsel prior to questioning, but also to have counsel present during any questioning." *Id.*, at 470. Because the "accused who does not know his rights and therefore does not make a request may be the person who most needs counsel," *id.*, at 470–471, a defendant "must be clearly informed" regarding two aspects of his right to consult an attorney: "the right to consult with a lawyer and to have the lawyer with him during interrogation," *id.*, at 471.

In this case, the form regularly used by the Tampa police warned Powell that he had "the right to talk to a lawyer before answering any of our questions." App. 3. This informed him only of the right to consult with a lawyer before questioning, the very right the *Miranda* Court identified as insufficient to protect the Fifth Amendment privilege. The warning did not say anything about the right to have counsel present during interroga-

tion. Although we have never required "rigidity in the *form* of the required warnings," *California* v. *Prysock*, 453 U. S. 355, 359 (1981) *(per curiam)*, this is, I believe, the first time the Court has approved a warning which, if given its natural reading, entirely omitted an essential element of a suspect's rights.

Despite the failure of the warning to mention it, in the Court's view the warning "reasonably conveyed" to Powell that he had the right to a lawyer's presence during the interrogation. *Ante*, at 10. The Court cobbles together this conclusion from two elements of the warning. First, the Court assumes the warning regarding Powell's right "to talk to a lawyer before answering any of [the officers'] questions," App. 3, conveyed that "Powell could consult with a lawyer before answering any *particular* question," *ante*, at 10 (emphasis added).[7] Second, in the Court's view, the addition of a catchall clause at the end of the recitation of rights "confirmed" that Powell could use his right to consult an attorney "while the interrogation was underway." *Ibid*.

The more natural reading of the warning Powell was given, which (1) contained a temporal limit and (2) failed to mention his right to the presence of counsel in the interrogation room, is that Powell only had the right to consult with an attorney before the interrogation began, not that he had the right to have an attorney with him during questioning. Even those few Courts of Appeals that have approved warnings that did not expressly men-

---

[7] This assumption makes it easier for the Court to conclude the warning conveyed a right to have a lawyer present. If a suspect is told he has the right to consult with an attorney before answering any particular question, the Court may be correct that he would reasonably conclude he has the right to a lawyer's presence because otherwise he would have to imagine he could consult his attorney in some unlikely fashion (*e.g.*, by leaving the interrogation room between every question).

tion the right to an attorney's presence during interrogation[8] have found language of the sort used in Powell's warning to be misleading. For instance, petitioner cites the Second Circuit's decision in *United States* v. *Lamia*, 429 F. 2d 373 (1970), as an example of a court applying the properly flexible approach to *Miranda*. But in that case, the Second Circuit expressly distinguished a warning that a suspect "'could consult an attorney prior to any question,'" which was "affirmatively misleading since it was thought to imply that the attorney could not be present during questioning." 429 F. 2d, at 377.[9] That even

--------------

[8] Several Courts of Appeals have held that warnings that did not expressly inform a suspect of his right to have counsel present during interrogation did not adequately inform a suspect of his *Miranda* rights. See, *e.g.*, *United States* v. *Tillman*, 963 F. 2d 137, 141 (CA6 1992); *United States* v. *Bland*, 908 F. 2d 471, 474 (CA9 1990); *United States* v. *Anthon*, 648 F. 2d 669, 672–673 (CA10 1981); *Windsor* v. *United States*, 389 F. 2d 530, 533 (CA5 1968). And most of the Circuits that have not required express mention of the right to an attorney's presence have approved only general warnings regarding the right to an attorney; that is, warnings which did not specifically mention the right to counsel's presence during interrogation but which also contained no limiting words that might mislead a suspect as to the broad nature of his right to counsel. See, *e.g.*, *United States* v. *Frankson*, 83 F. 3d 79, 82 (CA4 1996); *United States* v. *Caldwell*, 954 F. 2d 496, 502 (CA8 1992); *United States* v. *Adams*, 484 F. 2d 357, 361–362 (CA7 1973). I am doubtful that warning a suspect of his "right to counsel," without more, reasonably conveys a suspect's full rights under *Miranda*, but at least such a general warning does not include the same sort of misleading temporal limitation as in Powell's warning.

[9] Petitioner also cites *Bridgers* v. *Dretke*, 431 F. 3d 853 (CA5 2005), in which the Fifth Circuit held the Texas Court of Criminal Appeals did not unreasonably apply clearly established federal law in finding adequate a warning in which a suspect was informed that "he had the right to the *presence* of an attorney before any questioning commenced." *Id.*, at 857 (internal quotation marks omitted). But even assuming that warning would sufficiently apprise an individual of his right to an attorney's presence *during* interrogation, the fact that the warning mentioned an attorney's presence materially distinguishes it from the warning Powell received. The Fifth Circuit quoted with approval the

the Courts of Appeals taking the most flexible approach to *Miranda* have found warnings like Powell's misleading should caution the Court against concluding that such a warning reasonably conveyed Powell's right to have an attorney with him during the interrogation.

When the relevant clause of the warning in this case is given its most natural reading, the catchall clause does not meaningfully clarify Powell's rights. It communicated that Powell could exercise the previously listed rights at any time. Yet the only previously listed right was the "right to talk to a lawyer *before* answering any of [the officers'] questions." App. 3 (emphasis added). Informing Powell that he could exercise, at any time during the interview, the right to talk to a lawyer *before* answering any questions did not reasonably convey the right to talk to a lawyer *after* answering some questions, much less implicitly inform Powell of his right to have a lawyer with him at all times during interrogation. An intelligent suspect could reasonably conclude that all he was provided was a one-time right to consult with an attorney, not a right to have an attorney present with him in the interrogation room at all times.[10]

_____

state court's assessment that warning a suspect solely that "he had the right to consult or speak to an attorney before questioning . . . might have created the [impermissible] impression that the attorney could not be present during interrogation." *Ibid.* (internal quotation marks omitted).

[10] The Court supports its analysis by taking note of Powell's testimony at trial, given after the trial judge had overruled his lawyer's objection that the warning he received was inadequate. In my view, the testimony in context is not probative of what Powell thought the warnings meant. It did not explore what Powell understood the warnings to mean, but simply established, as a prelude to Powell's testimony explaining his prior statement, that he had waived his rights. Regardless, the testimony is irrelevant, as the Court acknowledges. "No amount of circumstantial evidence that a person may have been aware of [the right to have a lawyer with him during interrogation] will suffice to stand" in the stead of an adequate warning. *Miranda* v. *Arizona*, 384

The Court relies on *Duckworth* v. *Eagan*, 492 U. S. 195 (1989), and *Prysock*, 453 U. S. 355, but in neither case did the warning at issue completely omit one of a suspect's rights. In *Prysock*, the warning regarding the right to an appointed attorney contained no temporal limitation, see *id.*, at 360–361, which clearly distinguishes that case from Powell's. In *Duckworth*, the suspect was explicitly informed that he had the right "to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning," and that he had "this right to the advice and presence of a lawyer even if you cannot afford to hire one." 492 U. S., at 198 (emphasis deleted; internal quotation marks omitted). The warning thus conveyed in full the right to appointed counsel before and during the interrogation. Although the warning was arguably undercut by the addition of a statement that an attorney would be appointed "if and when you go to court," the Court found the suspect was informed of his full rights and the warning simply added additional, truthful information regarding when counsel would be appointed. *Ibid.* (emphasis deleted; internal quotation marks omitted). Unlike the *Duckworth* warning, Powell's warning did not convey his *Miranda* rights in full with the addition of some arguably misleading statement. Rather, the warning entirely failed to inform him of the separate and distinct right "to have counsel present during any questioning." *Miranda*, 384 U. S., at 470.

In sum, the warning at issue in this case did not reasonably convey to Powell his right to have a lawyer with him during the interrogation. "The requirement of warnings . . . [is] fundamental with respect to the Fifth Amendment privilege and not simply a preliminary ritual to existing methods of interrogation." *Id.*, at 476. In determining that the warning implied what it did not say,

U. S. 436, 471–472 (1966).

it is the Court "that is guilty of attaching greater importance to the form of the *Miranda* ritual than to the substance of the message it is intended to convey." *Prysock,* 453 U. S., at 366 (STEVENS, J., dissenting).

## III

Whether we focus on Powell's particular case, or the use of the warning form as the standard used in one jurisdiction, it is clear that the form is imperfect. See *ante*, at 12. As the majority's decision today demonstrates, reasonable judges may well differ over the question whether the deficiency is serious enough to violate the Federal Constitution. That difference of opinion, in my judgment, falls short of providing a justification for reviewing this case when the judges of the highest court of the State have decided the warning is insufficiently protective of the rights of the State's citizens. In my view, respect for the independence of state courts, and their authority to set the rules by which their citizens are protected, should result in a dismissal of this petition.

I respectfully dissent.